THE PEOPLE ex rel. JAMES H. SHERRILL *v*. THE CANAL BOARD.

(SPECIAL TERM, ALBANY COUNTY, DECEMBER, 1871.)

The constitutional provision (art. 7, § 3) requiring contracts for work and materials on any canal to be made with the lowest bidder, will not permit the canal board, after a contract has been awarded, to increase the price of work and materials to be subsequently done or provided under such contract, even if authorized so to do by an act of the legislature.

Accordingly, where an act of the legislature directs the canal board, if they should find that the actual cost was above the contract price, to specify the prices which should be paid for work and materials to be done or furnished after the passage of the act, and enacted that the contractor should be paid accordingly, and the board refused so to specify, on the ground that to do so would be to violate the constitutional provision,—*Held*, that the contractor was not entitled to a mandamus to compel the board so to specify prices for work and materials done and furnished after the passage of the act.

MOTION for mandamus. The facts are stated in the opinion.

*Charles Hughes* and *John H. Reynolds*, for the relator.

*Marshall B. Champlain*, attorney-general, for the defend ants.

LEARNED, J. This is a motion for a mandamus to compel the defendants to determine and specify the prices which the relator shall be paid for labor and materials on a certain contract. There is only one point involved, and that can be easily stated.

The relator had a contract with the State for doing certain canal work. After the work had been in part done, the legislature passed an act (Sess. Laws, 1870, chap. 543) authorizing the canal board to take proof in regard to the cost of the work; if they should find that, owing to unexpected difficulties, the actual cost was above the contract price, they were, by resolution to be entered on their minutes, to specify the prices he should be paid for work and materials thus far done and furnished; they were also in like manner to specify the prices he should be paid for work and materials to be thereafter done and furnished. The prices thus fixed were to be attached to the contract, and to be deemed and taken as the prices, instead of those named in the contract, and he was to be paid accordingly; or, the board were authorized to cancel the contract.

On the 14th day of February, 1871, the board voted not to cancel the contract. They voted that the relator should be allowed, at certain specified rates for work and material, done and furnished before the passage of the act; and they voted that, although owing to unexpected difficulties, the actual cost would be greater than the contract price, yet that they declined to specify the prices for work and materials, to be done and furnished subsequent to the passage of the act, on the ground that to do so would be in violation of art. 7, sec. 3, of the Constitution, which provides that: "All contracts for work and materials on any canal, shall be made with the person who shall offer to do or provide the same at the lowest price, with adequate security for their performance."

It was admitted on the argument that this constitutional

provision does not prevent the legislature from canceling a contract; and that it does not prevent the legislature, after a contract has been completed, from paying the contractor a sum of money, in consideration of alleged losses under the contract. But it was urged on the part of the defendant that this constitutional provision does prohibit the legislature or any State officer from increasing the prices for work or materials to be done or furnished, after a contract therefore has been awarded in pursuance of the Constitution.

In examining this question, of course I have nothing to do with the fairness and justice of the relator's claim, or with the possible evils of legislation similar to that of the act in question. The only matter for me to decide is the bare legal point, irrespective of any other consideration.

Can the legislature then authorize the canal board, after a contract has been awarded to the lowest bidder to alter the contract by agreeing to pay him more than his bid? This is a question of power; and if the relator's view is right, then the legislature might, by a general act, authorize the board, after a contract had been awarded to the lowest bidder, to fix the prices to be actually paid him at (for instance) the highest bid which had been made. It seems to me that this would be a plain evasion of the Constitution. The Constitution cannot mean that the proper officers shall go through the form of an award to the lowest bidder; make a contract with him, at his, the lowest bid; and forthwith increase the prices so that they may perhaps be more than the highest bid was. "Every positive direction," says Judge Denio, speaking of the Constitution in the *People* v. *Draper* 15 N. Y., at 544, ' contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision." When the Constitution says that all contracts shall be made with the person who shall offer to do or provide at the lowest price, it certainly implies that the contract shall be made at that price. It cannot mean that the contract shall be made *with* the lowest bidder, but *at* some higher price than he offered. Nor can it mean that after making the con-

tract with the lowest bidder, and at his, the lowest price on one day, the contract may be altered the next day so as to give him a higher price.

It is very possible that the legislature might cancel the contract. But, in the present case, the board decided not to do this. But, if the board make new prices, this is, in effect, making a new contract. For a part, and a very essential part, of the contract, is the price to be paid. And I do not see, if the legislature could authorize an increase of the price in this contract with the relator, why they could not authorize the canceling of the relator's contract and the execution of a new contract with some other person at the increased price, as fixed.

The argument of the relator is, that, having once awarded a contract to the lowest bidder, the board has complied with the Constitution, and that a subsequent increase of price is not prohibited; and he cites *The People* v. *Fay* (3 Lansing, 398). But I do not think that this can be correct. And the decision in that case appears to me to agree with the views I am now stating.

It is said that the legislature may partially do the same thing, by giving, as a gratuity to the contractor, after his work is done, the same amount which he could have obtained by an increase of rates. That is possible; but the suggestion is of no force in considering the constitutional question. The possibility that the legislature might give to the lowest bidder, in case he should obtain the contract, a gratuity, after his work was done, which would amount to more than the offer of the highest bidder, would not be a reason why any State officer should let the contract to any one but the lowest bidder. Nor would this possibility of a future gratuity be any argument for the constitutionality of an act which should require the letting of a contract at any other price than the lowest bid.

It is true, that a court should be careful, in declaring an act of the legislature unconstitutional. But, in answer to that suggestion, it is to be remembered that the writ of mandamus is not a writ of right, but is somewhat discretionary. It is

one which should not be issued unless the relator's right to it is unquestionable. This is a familiar principle, to which I need cite no authorities.

Motion for mandamus denied, with ten dollars costs against the relator.